*185 OPINION.
Smith:
1. At the hearing of these appeals, counsel for the respondent denied that the Board had jurisdiction of these proceedings upon the ground that the respondent was not proposing to make assessments against the petitioners but that he had only made adjudications of claims in abatement filed by him. In his brief subsequently filed the respondent did not raise the question of the jurisdiction of the Board.
Section 283 (f) of the Bevenue Act of 1926 clearly gives the Board jurisdiction.
2. It will be unnecessary to consider the specific amounts of income derived by the petitioners from the dissolution of The A. H. Lam-born & Co. as a result of the vesting in the petitioners of pro rata portions of the net assets of the dissolved corporation for the reason that it was stipulated at the hearing that if the Board should hold that the transfer of the assets from the corporation to the partnership which occurred on or about March 30, 1918, resulted in taxable income to the petitioners, the amount of such income was correctly computed by the Commissioner. It is necessary to consider, therefore, only whether the transaction in question gave rise to taxable income.
On this point the respondent relies on the following Board decisions: E. C. Huffman, 1 B. T. A. 52; Estate of D. F. Buchmiller, 1 B. T. A. 380; George Shapiro, 2 B. T. A. 620; F. D. Keim, 4 B. T. A. 1240; G. D. Rigsly, 6 B. T. A. 194; T. T. Rudolph, 6 B. T. A. 265.
In all of these cases the Board held that where a corporation was dissolved and the assets were transferred to the stockholders, the stockholders derived income to the extent of the fair value of the assets received in excess of cost if acquired subsequent to February 28, 1913, and if before in excess of cost or March 1, 1913, value, of the *186 shares of stock owned by such stockholders, whichever was higher. In line with those decisions it must be held that the petitioners derived taxable income from the distribution to them of the profit to The A. H. Lamborn Co. earned during 1917 and received by them during 1918. It is immaterial that for 1917 the corporation was assessed under section 209 of the Revenue Act o-f 1917.
3. It is contended by the petitioners that a former Commissioner, in 1918, made a decision to the effect that the petitioners derived no taxable income from the transaction here in question and that the present Commissioner has no authority to change that decision. Upon this point it is to be noted that the then Commissioner made a ruling in a hypothetical case. Counsel for the petitioners did not inform the then Commissioner of the name of the company which he had in mind. It was represented that the assets were distributed “in kind.” The evidence indicates, however, that what was distributed to the stockholders in 1918 was the profits which were earned during 1917. ' The extent to which the profits had been reduced to cash by March 30, 1918, is not disclosed by the evidence. We are not persuaded that the ruling made by the former Commissioner covered the precise facts in the instant case. But if the ruling did precisely cover the case we are of the opinion that the present Commissioner is not bound by such a decision in the determination of deficiencies against the petitioners. The facts herein stated are substantially the same as those which obtained in Yokohama-Ki-Ito Kwaisha, Ltd., 5 B. T. A. 1248, in which we held that a letter sent by the Commissioner in 1916 to an attorney, advising him that a foreign corporation was, in his opinion, entitled to deduct from gross income in a tax return made under the Revenue Act of 1916, such portion of the income received from sources within the United States as represents “the actual commission for buying silk in Japan” is not such an interpretation of the statute as has any binding effect upon a successor Commissioner in determining true tax liability for the fiscal year ended June 30, 1917. See also United States v. Updike, 1 Fed. (2d) 550; Estate of W. S. Tyler, 9 B. T. A. 255; James Couzens, 11 B. T. A. 1040.
4. The petitioners contend that in any event the respondent erred in holding the petitioners liable to normal tax in respect of the distribution of the earnings of The A. H. Lamborn & Co. for 1917 received by them in 1918. In support of their contention they cite the case of Hellmich v. Hellman, 18 Fed. (2d) 239, decided by the Circuit Court of Appeals, Eighth Circuit, on May 18, 1927. This decision was, however, reversed by the United States Supreme Court on February 20, 1928, in Hellmich v. Hellman, 276 U. S. 233. The contention of the respondent is accordingly sustained.
*187 5. The main contention of the petitioners is that there are no valid assessments against the petitioners for the year 1918 and that the statute of limitations has operated to bar the respondent from making such assessments. The evidence upon this point is voluminous. The petitioners contend that the records of the Commissioner’s office do not show valid assessments for the reason that as to one of the petitioners, A. H. Lamborn, the only assessment outstanding was made upon the basis of a tentative return and as to the others that the signature of the Commissioner has not been proven. We will first consider the case of A. II. Lamborn.
The records of the Commissioner’s office show an assessment against Lamborn of $160,000 less $40,000 paid upon the filing of the return, which assessment was made on September 19, 1919. In the first place, it is contended that an assessment can not be made on the basis of a tentative return for the reason that a tentative return is not a return required by the statute. Dallas Brass & Copper Co., 3 B. T. A. 856; Matteawan Mfg. Co., 4 B. T. A. 953; Boston Hide & Leather Co., 5 B. T. A. 617. In Matteawan Mfg. Co., supra, we said:
We express no opinion as to whether or not the assessment made against the petitioner, in the amount of $40,000, on the basis of its tentative return, and the assessment of the entire consolidated tax liability against the Henderson Estate Co., were proper assessments; * * *
In the instant proceedings we also think it is unnecessary to express an opinion upon this point. After Lamborn filed a completed return for 1918 on June 16,1919. the collector recommended to the Commissioner that $95,249.61 of the tax assessed against Lamborn be abated, inasmuch as it appeared that the tax legally due from him was only $61,750.39, all of which had been paid. The records introduced in evidence were explained by a witness for the respondent as meaning that the respondent had rejected the recommendation of the collector and had allowed the unpaid balance of $95,249.61 to stand against Lamborn until his claim for the abatement of the assessment of $95,249.61 had been acted upon by the respondent; that when action was taken upon that claim a certificate for an overassessment (No. 596,375) was allowed in the amount of $11,536.03. This certificate of over assessment was received in the collector’s office on November 14, 1925. The records further show that an assessment of $83,713.58, the amount of tax claimed to be due from Arthur II. Lamborn in excess of the amount of tax already paid by him for 1918, was made under date of March 10, 1925; that as a result of a protest made by him this assessment was canceled on March 31,1925. This leaves the only assessment outstanding against Lamborn as the unpaid and unabated balance of the assessment made on the basis of the tentative return which was made under date of September 19,1919.
*188 Arthur H. Lamborn’s final return for 1918 was filed on June 16, 1919. Under section 277 (a) (2) of the Revenue Act of 1921, the respondent was required to assess any tax due from him in respect of the year 1918 “ within 5 years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period.” On or about February 19,1924, Lam-born filed a consent with the respondent extending for one year the period within which an assessment could be made. Under this consent an additional assessment could have been made against Lamborn up to June 15, 1925.
Section 278(d) of the Revenue Act of 1926 provides:
Where the assessment of any income, excess-profits, or war-profits tax imposed by this title or by prior Act of Congress has been made (whether before or after the enactment of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer.
The only consent filed by Lamborn was that set out in the findings of fact which did not extend the period for the assessment or collection of the tax except “ for a period of one year after the expiration o'f the statutory period of limitation, or the statutory period of limitation as extended by any waivers already on file with the Bureau, within which assessments of taxes may be made for the year or years mentioned.” The completed return of Lamborn was filed on June 16, 1919. The consent did not extend the period for the assessment or collection of the tax beyond June 16, 1925. The respondent contends, however, that the action of Lamborn ,in filing a bond on or about May 7, 1925, with the collector in connection with his abatement claim for the abatement of an assessment, and his filing with the collector of an agreement with the Bank of the Manhattan Co. on or about December 2, 1925, or this series of transactions amounted to a consent on the part of Lamborn for the collection of the assessment after the statute of limitations had operated to bar collection. We think this position is untenable. The bond which was filed in connection with the abatement claim was immediately returned to the petitioner and the surety company was released from its obligation on the bond. The period of the statute of limitations operated prior to the filing with the collector of an agreement with the Bank of the Manhattan Co. on December 2, 1925. A perusal of this agreement shows that it was in the nature of an appeal bond. It was merely for the purpose of protecting the collector in case the Board of Tax Appeals should decide the issue against Lamborn and find that the tax was legally due. This was not a consent to a later *189 determination of the tax. United States v. John Barth Co., 27 Fed. (2d) 782; C. B. Shaffer, 12 B. T. A. 298. The statute of limitations tolled in the case of Lamborn on September 18,1925, six years having elapsed from the date of any outstanding assessment. No suit was ever instituted upon the basis of the bond which was filed and later canceled or upon the basis of the agreement with the Bank of the Manhattan Co. In view of these facts it must be held that there is no deficiency due from Lamborn.
The situation with respect to the other six petitioners is entirely different. They all filed on or about February 19, 1924, consents similar to that filed by Lamborn. Acting upon such consents the respondent on March 6, 1925, made assessments against them for the amounts of tax due from them for the year 1918 in excess of the amounts paid upon their returns filed on June 16, 1919. There is nothing in the record that proves or tends to prove that the assessments were not made by the Commissioner, the official charged with the duty of making the assessments. The respondent had six years from the date of the making of the assessments within which to collect the same. Section 278(d) of the Revenue Act of 1926.
Reviewed by the Board.

Judgment of no deficiency will he entered in the case of Lamborn, and judgment for the respondent will he entered in the cases of the other petitioners.